# Exhibit A

EXHIBIT 2A



# AIA® Document A102™ – 2007

**Standard Form of Agreement Between Owner and Contractor** *where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price*

**AGREEMENT** made as of the Twenty-second day of October in the year Two Thousand Fifteen
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name, legal status, address and other information)*

Western Oaks 19 Construction, Inc.
1301 Capital of Texas Highway
Suite A-300
Austin, TX 78746

Telephone Number: 512-615-9500

and the Contractor:
*(Name, legal status, address and other information)*

Sabre Commercial, Inc.
2001 Chicon Street
Austin, Texas 78722
Telephone Number: 512-767-7400

for the following Project:
*(Name, location and detailed description)*

Waterleaf Medical at Davis Lane Shared Site
5200-B Davis Lane
Austin, Texas 78749
Shared scope of work benefiting Autumn Leaves and Waterleaf Medical Building,
including shared drive, detention water quality pond, sitework, etc.

The Architect:
*(Name, legal status, address and other information)*

Euwer & Associates
205 Barracuda Street
Bayou Vista, Texas 77563
Telephone Number: 512-923-2975

The Owner and Contractor agree as follows.

---

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

This document is not intended for use in competitive bidding.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

---

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                               (944663383)

1

Unofficial copy Travis Co. District Clerk Velva L. Price

Western Oaks 000001

TABLE OF ARTICLES

1   THE CONTRACT DOCUMENTS

2   THE WORK OF THIS CONTRACT

3   RELATIONSHIP OF THE PARTIES

4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

5   CONTRACT SUM

6   CHANGES IN THE WORK

7   COSTS TO BE REIMBURSED

8   COSTS NOT TO BE REIMBURSED

9   DISCOUNTS, REBATES AND REFUNDS

10   SUBCONTRACTS AND OTHER AGREEMENTS

11   ACCOUNTING RECORDS

12   PAYMENTS

13   DISPUTE RESOLUTION

14   TERMINATION OR SUSPENSION

15   MISCELLANEOUS PROVISIONS

16   ENUMERATION OF CONTRACT DOCUMENTS

17   INSURANCE AND BONDS

## ARTICLE 1   THE CONTRACT DOCUMENTS
The Contract Documents consist of this Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement, all of which form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. If anything in the other Contract Documents, other than a Modification, is inconsistent with this Agreement, this Agreement shall govern.

## ARTICLE 2   THE WORK OF THIS CONTRACT
The Contractor shall fully execute the Work described in the Contract Documents, except as specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3   RELATIONSHIP OF THE PARTIES
The Contractor accepts the relationship of trust and confidence established by this Agreement and covenants with the Owner to cooperate with the Architect and exercise the Contractor's skill and judgment in furthering the interests of the Owner; to furnish efficient business administration and supervision; to furnish at all times an adequate supply of workers and materials; and to perform the Work in an expeditious and economical manner consistent with the Owner's interests. The Owner agrees to furnish and approve, in a timely manner, information required by the Contractor and to make payments to the Contractor in accordance with the requirements of the Contract Documents.

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                     (944663383)

2

Unofficial copy Travis Co. District Clerk Velva L. Price

Western Oaks 000002

**ARTICLE 4   DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION**
§ **4.1** The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement, if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*

October 02, 2015

If, prior to commencement of the Work, the Owner requires time to file mortgages and other security interests, the Owner's time requirement shall be as follows:

N/A

§ **4.2** The Contract Time shall be measured from the date of commencement.

§ **4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than One hundred fifty ( 150 ) days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. If appropriate, insert requirements for earlier Substantial Completion of certain portions of the Work.)*

| **Portion of Work** | **Substantial Completion date** |
|---|---|
| N/A | N/A |

, subject to adjustments of this Contract Time as provided in the Contract Documents.

*(Insert provisions, if any, for liquidated damages relating to failure to achieve Substantial Completion on time, or for bonus payments for early completion of the Work.)*

None

**ARTICLE 5   CONTRACT SUM**
§ **5.1** The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum is the Cost of the Work as defined in Article 7 plus the Contractor's Fee.

§ **5.1.1** The Contractor's Fee:
*(State a lump sum, percentage of Cost of the Work or other provision for determining the Contractor's Fee.)*

Five percent (5%)

§ **5.1.2** The method of adjustment of the Contractor's Fee for changes in the Work:

Change Order with 5% fee. Additional general conditions will only apply in instances where contract duration is extended.

§ **5.1.3** Limitations, if any, on a Subcontractor's overhead and profit for increases in the cost of its portion of the Work:

10% Overhead, 5% Fee

§ **5.1.4** Rental rates for Contractor-owned equipment shall not exceed 0    percent ( 0    %) of the standard rate paid at the place of the Project.

**Init.**

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
**User Notes:**                                                                (944663383)

**3**

Western Oaks 000003

§ 5.1.5 Unit prices, if any:
*(Identify and state the unit price; state the quantity limitations, if any, to which the unit price will be applicable.)*

| Item | Units and Limitations | Price Per Unit ($0.00) |
|------|----------------------|------------------------|
| N/A | N/A | N/A |

## § 5.2 GUARANTEED MAXIMUM PRICE

§ 5.2.1 The Contract Sum is guaranteed by the Contractor not to exceed Five Hundred Twelve Thousand Five Hundred Dollars and Zero Cents ($ 512,500.00 ), subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.
*(Insert specific provisions if the Contractor is to participate in any savings.)*

Shared savings will be split 50/50 between owner and contractor at completion of project

§ 5.2.2 The Guaranteed Maximum Price is based on the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternates. If bidding or proposal documents permit the Owner to accept other alternates subsequent to the execution of this Agreement, attach a schedule of such other alternates showing the amount for each and the date when the amount expires.)*

None

§ 5.2.3 Allowances included in the Guaranteed Maximum Price, if any:
*(Identify allowance and state exclusions, if any, from the allowance price.)*

| Item | Price |
|------|-------|
| Pond Structures | $196,700 |

§ 5.2.4 Assumptions, if any, on which the Guaranteed Maximum Price is based:

None

§ 5.2.5 To the extent that the Drawings and Specifications are anticipated to require further development by the Architect, the Contractor has provided in the Guaranteed Maximum Price for such further development consistent with the Contract Documents and reasonably inferable therefrom.  Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

## ARTICLE 6    CHANGES IN THE WORK

§ 6.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work may be determined by any of the methods listed in Section 7.3.3 of AIA Document A201–2007, General Conditions of the Contract for Construction.

§ 6.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of AIA Document A201–2007 and the term "costs" as used in Section 7.3.7 of AIA Document A201–2007 shall have the meanings assigned to them in AIA Document A201–2007 and shall not be modified by Articles 5, 7 and 8 of this Agreement. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 6.3 In calculating adjustments to the Guaranteed Maximum Price, the terms "cost" and "costs" as used in the above-referenced provisions of AIA Document A201–2007 shall mean the Cost of the Work as defined in Article 7 of this Agreement and the term "fee" shall mean the Contractor's Fee as defined in Section 5.1.1 of this Agreement.

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                                      (944663383)

Western Oaks 000004


**§ 7.5.2** Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by construction workers that are provided by the Contractor at the site and costs of transportation, installation, minor repairs, dismantling and removal. The total rental cost of any Contractor-owned item may not exceed the purchase price of any comparable item. Rates of Contractor-owned equipment and quantities of equipment shall be subject to the Owner's prior approval.

**§ 7.5.3** Costs of removal of debris from the site of the Work and its proper and legal disposal.

**§ 7.5.4** Costs of document reproductions, facsimile transmissions and long-distance telephone calls, postage and parcel delivery charges, telephone service at the site and reasonable petty cash expenses of the site office.

**§ 7.5.5** Costs of materials and equipment suitably stored off the site at a mutually acceptable location, subject to the Owner's prior approval.

**§ 7.6 MISCELLANEOUS COSTS**

**§ 7.6.1** Premiums for that portion of insurance and bonds required by the Contract Documents that can be directly attributed to this Contract. Self-insurance for either full or partial amounts of the coverages required by the Contract Documents, with the Owner's prior approval.

**§ 7.6.2** Sales, use or similar taxes imposed by a governmental authority that are related to the Work and for which the Contractor is liable.

**§ 7.6.3** Fees and assessments for the building permit and for other permits, licenses and inspections for which the Contractor is required by the Contract Documents to pay.

**§ 7.6.4** Fees of laboratories for tests required by the Contract Documents, except those related to defective or nonconforming Work for which reimbursement is excluded by Section 13.5.3 of AIA Document A201–2007 or by other provisions of the Contract Documents, and which do not fall within the scope of Section 7.7.3.

**§ 7.6.5** Royalties and license fees paid for the use of a particular design, process or product required by the Contract Documents; the cost of defending suits or claims for infringement of patent rights arising from such requirement of the Contract Documents; and payments made in accordance with legal judgments against the Contractor resulting from such suits or claims and payments of settlements made with the Owner's consent. However, such costs of legal defenses, judgments and settlements shall not be included in the calculation of the Contractor's Fee or subject to the Guaranteed Maximum Price. If such royalties, fees and costs are excluded by the last sentence of Section 3.17 of AIA Document A201–2007 or other provisions of the Contract Documents, then they shall not be included in the Cost of the Work.

**§ 7.6.6** Costs for electronic equipment and software, directly related to the Work with the Owner's prior approval.

**§ 7.6.7** Deposits lost for causes other than the Contractor's negligence or failure to fulfill a specific responsibility in the Contract Documents.

**§ 7.6.8** Legal, mediation and arbitration costs, including attorneys' fees, other than those arising from disputes between the Owner and Contractor, reasonably incurred by the Contractor after the execution of this Agreement in the performance of the Work and with the Owner's prior approval, which shall not be unreasonably withheld.

**§ 7.6.9** Subject to the Owner's prior approval, expenses incurred in accordance with the Contractor's standard written personnel policy for relocation and temporary living allowances of the Contractor's personnel required for the Work.

**§ 7.6.10** That portion of the reasonable expenses of the Contractor's supervisory or administrative personnel incurred while traveling in discharge of duties connected with the Work.

**§ 7.7 OTHER COSTS AND EMERGENCIES**

**§ 7.7.1** Other costs incurred in the performance of the Work if, and to the extent, approved in advance in writing by the Owner.

Unofficial copy Travis Co District Clerk Velva L. Price

§ **7.7.2** Costs incurred in taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.4 of AIA Document A201–2007.

§ **7.7.3** Costs of repairing or correcting damaged or nonconforming Work executed by the Contractor, Subcontractors or suppliers, provided that such damaged or nonconforming Work was not caused by negligence or failure to fulfill a specific responsibility of the Contractor and only to the extent that the cost of repair or correction is not recovered by the Contractor from insurance, sureties, Subcontractors, suppliers, or others.

§ **7.8 RELATED PARTY TRANSACTIONS**
§ **7.8.1** For purposes of Section 7.8, the term "related party" shall mean a parent, subsidiary, affiliate or other entity having common ownership or management with the Contractor; any entity in which any stockholder in, or management employee of, the Contractor owns any interest in excess of ten percent in the aggregate; or any person or entity which has the right to control the business or affairs of the Contractor. The term "related party" includes any member of the immediate family of any person identified above.

§ **7.8.2** If any of the costs to be reimbursed arise from a transaction between the Contractor and a related party, the Contractor shall notify the Owner of the specific nature of the contemplated transaction, including the identity of the related party and the anticipated cost to be incurred, before any such transaction is consummated or cost incurred. If the Owner, after such notification, authorizes the proposed transaction, then the cost incurred shall be included as a cost to be reimbursed, and the Contractor shall procure the Work, equipment goods or service from the related party, as a Subcontractor, according to the terms of Article 10. If the Owner fails to authorize the transaction, the Contractor shall procure the Work, equipment, goods or service from some person or entity other than a related party according to the terms of Article 10.

**ARTICLE 8   COSTS NOT TO BE REIMBURSED**
§ **8.1** The Cost of the Work shall not include the items listed below:
   .1   Salaries and other compensation of the Contractor's personnel stationed at the Contractor's principal office or offices other than the site office, except as specifically provided in Section 7.2, or as may be provided in Article 15;
   .2   Expenses of the Contractor's principal office and offices other than the site office;
   .3   Overhead and general expenses, except as may be expressly included in Article 7;
   .4   The Contractor's capital expenses, including interest on the Contractor's capital employed for the Work;
   .5   Except as provided in Section 7.3 of this Agreement, costs due to the negligence or failure of the Contractor, Subcontractors and suppliers or anyone directly or indirectly employed by any of them or for whose acts any of them may be liable to fulfill a specific responsibility of the Contract;
   .6   Any cost not specifically and expressly described in Article 7; and
   .7   Costs, other than costs included in Change Orders approved by the Owner, that would cause the Guaranteed Maximum Price to be exceeded.

**ARTICLE 9   DISCOUNTS, REBATES AND REFUNDS**
§ **9.1** Cash discounts obtained on payments made by the Contractor shall accrue to the Owner if (1) before making the payment, the Contractor included them in an Application for Payment and received payment from the Owner, or (2) the Owner has deposited funds with the Contractor with which to make payments; otherwise, cash discounts shall accrue to the Contractor. Trade discounts, rebates, refunds and amounts received from sales of surplus materials and equipment shall accrue to the Owner, and the Contractor shall make provisions so that they can be obtained.

§ **9.2** Amounts that accrue to the Owner in accordance with the provisions of Section 9.1 shall be credited to the Owner as a deduction from the Cost of the Work.

**ARTICLE 10   SUBCONTRACTS AND OTHER AGREEMENTS**
§ **10.1** Those portions of the Work that the Contractor does not customarily perform with the Contractor's own personnel shall be performed under subcontracts or by other appropriate agreements with the Contractor. The Owner may designate specific persons from whom, or entities from which, the Contractor shall obtain bids. The Contractor shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated especially for the

**Init.**

**/**

**AIA Document A102™ – 2007** (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                                    (944663383)

7

Work and shall deliver such bids to the Architect. The Owner shall then determine, with the advice of the Contractor and the Architect, which bids will be accepted. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

§ 10.2 When a specific bidder (1) is recommended to the Owner by the Contractor; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid that conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Contractor may require that a Change Order be issued to adjust the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Contractor and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ 10.3 Subcontracts or other agreements shall conform to the applicable payment provisions of this Agreement, and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner. If the Subcontract is awarded on a cost-plus a fee basis, the Contractor shall provide in the Subcontract for the Owner to receive the same audit rights with regard to the Subcontractor as the Owner receives with regard to the Contractor in Article 11, below.

## ARTICLE 11   ACCOUNTING RECORDS
The Contractor shall keep full and detailed records and accounts related to the cost of the Work and exercise such controls as may be necessary for proper financial management under this Contract and to substantiate all costs incurred. The accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's auditors shall, during regular business hours and upon reasonable notice, be afforded access to, and shall be permitted to audit and copy, the Contractor's records and accounts, including complete documentation supporting accounting entries, books, correspondence, instructions, drawings, receipts, subcontracts, Subcontractor's proposals, purchase orders, vouchers, memoranda and other data relating to this Contract. The Contractor shall preserve these records for a period of three years after final payment, or for such longer period as may be required by law.

## ARTICLE 12   PAYMENTS
### § 12.1 PROGRESS PAYMENTS
§ 12.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 12.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:

N/A

§ 12.1.3 Provided that an Application for Payment is received by the Architect not later than the 1st day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 1st day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Twenty-one ( 21 ) days after the Architect receives the Application for Payment.
*(Federal, state or local laws may require payment within a certain period of time.)*

§ 12.1.4 With each Application for Payment, the Contractor shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached, and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Contractor on account of the Cost of the Work equal or exceed (1) progress payments already received by the Contractor; less (2) that portion of those payments attributable to the Contractor's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ 12.1.5 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The schedule of values shall allocate the entire Guaranteed Maximum Price among the various portions of the Work, except that the Contractor's Fee shall be shown as a single separate item. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

**Init.**
/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes: (944663383)

8

§ 12.1.6 Applications for Payment shall show the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage of completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed; or (2) the percentage obtained by dividing (a) the expense that has actually been incurred by the Contractor on account of that portion of the Work for which the Contractor has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 12.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1  Take that portion of the Guaranteed Maximum Price properly allocable to completed Work as determined by multiplying the percentage of completion of each portion of the Work by the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values. Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.9 of AIA Document A201–2007;

.2  Add that portion of the Guaranteed Maximum Price properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work, or if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing;

.3  Add the Contractor's Fee, less retainage of Ten percent ( 10.00 %) The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

.4  Subtract retainage of Ten percent ( 10.00 %) from the portion of the Work that the Contractor self-performs;

.5  Subtract the aggregate of previous payments made by the Owner;

.6  Subtract the shortfall, if any, indicated by the Contractor in the documentation required by Section 12.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's auditors in such documentation; and

.7  Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201–2007.

§ 12.1.8 The Owner and the Contractor shall agree upon a (1) mutually acceptable procedure for review and approval of payments to Subcontractors and (2) the percentage of retainage held on Subcontracts, and the Contractor shall execute subcontracts in accordance with those agreements.

§ 12.1.9 In taking action on the Contractor's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Contractor and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 12.1.4 or other supporting data; that the Architect has made exhaustive or continuous on-site inspections; or that the Architect has made examinations to ascertain how or for what purposes the Contractor has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's auditors acting in the sole interest of the Owner.

§ 12.2 FINAL PAYMENT
§ 12.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when

.1  the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in Section 12.2.2 of AIA Document A201–2007, and to satisfy other requirements, if any, which extend beyond final payment;

.2  the Contractor has submitted a final accounting for the Cost of the Work and a final Application for Payment; and

.3  a final Certificate for Payment has been issued by the Architect.

§ 12.2.2 The Owner's auditors will review and report in writing on the Contractor's final accounting within 30 days after delivery of the final accounting to the Architect by the Contractor. Based upon such Cost of the Work as the

Init.

/

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                                                            (944663383)

9

Owner's auditors report to be substantiated by the Contractor's final accounting, and provided the other conditions of Section 12.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's auditors, either issue to the Owner a final Certificate for Payment with a copy to the Contractor, or notify the Contractor and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of the AIA Document A201–2007. The time periods stated in this Section 12.2.2 supersede those stated in Section 9.4.1 of the AIA Document A201–2007. The Architect is not responsible for verifying the accuracy of the Contractor's final accounting.

**§ 12.2.3** If the Owner's auditors report the Cost of the Work as substantiated by the Contractor's final accounting to be less than claimed by the Contractor, the Contractor shall be entitled to request mediation of the disputed amount without seeking an initial decision pursuant to Section 15.2 of A201–2007. A request for mediation shall be made by the Contractor within 30 days after the Contractor's receipt of a copy of the Architect's final Certificate for Payment. Failure to request mediation within this 30-day period shall result in the substantiated amount reported by the Owner's auditors becoming binding on the Contractor. Pending a final resolution of the disputed amount, the Owner shall pay the Contractor the amount certified in the Architect's final Certificate for Payment.

**§ 12.2.4** The Owner's final payment to the Contractor shall be made no later than *days* after the issuance of the Architect's final Certificate for Payment, or as follows:

N/A

**§ 12.2.5** If, subsequent to final payment and at the Owner's request, the Contractor incurs costs described in Article 7 and not excluded by Article 8 to correct defective or nonconforming Work, the Owner shall reimburse the Contractor such costs and the Contractor's Fee applicable thereto on the same basis as if such costs had been incurred prior to final payment, but not in excess of the Guaranteed Maximum Price. If the Contractor has participated in savings as provided in Section 5.2, the amount of such savings shall be recalculated and appropriate credit given to the Owner in determining the net amount to be paid by the Owner to the Contractor.

## ARTICLE 13   DISPUTE RESOLUTION
### § 13.1 INITIAL DECISION MAKER
The Architect will serve as Initial Decision Maker pursuant to Section 15.2 of AIA Document A201–2007, unless the parties appoint below another individual, not a party to the Agreement, to serve as Initial Decision Maker.
*(If the parties mutually agree, insert the name, address and other contact information of the Initial Decision Maker, if other than the Architect.)*

Trac Bledsoe
B3 Commercial Investments
515 Congress, Suite 1515
Austin, Texas 78701
Telephone Number: 512-450-4200

### § 13.2 BINDING DISPUTE RESOLUTION
For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201–2007, the method of binding dispute resolution shall be as follows:
*(Check the appropriate box. If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction.)*

[   ]   Arbitration pursuant to Section 15.4 of AIA Document A201–2007

[ X ]   Litigation in a court of competent jurisdiction

[   ]   Other *(Specify)*

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
**User Notes:**                                                                                     (944663383)

init.

/

**10**

Western Oaks 000010

## ARTICLE 14   TERMINATION OR SUSPENSION

§ 14.1 Subject to the provisions of Section 14.2 below, the Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201–2007.

§ 14.2 If the Owner terminates the Contract for cause as provided in Article 14 of AIA Document A201–2007, the amount, if any, to be paid to the Contractor under Section 14.2.4 of AIA Document A201–2007 shall not cause the Guaranteed Maximum Price to be exceeded, nor shall it exceed an amount calculated as follows:

 .1  Take the Cost of the Work incurred by the Contractor to the date of termination;
 .2  Add the Contractor's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1.1 or, if the Contractor's Fee is stated as a fixed sum in that Section, an amount that bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion; and
 .3  Subtract the aggregate of previous payments made by the Owner.

§ 14.3 The Owner shall also pay the Contractor fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Contractor that the Owner elects to retain and that is not otherwise included in the Cost of the Work under Section 14.2.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Contractor shall, as a condition of receiving the payments referred to in this Article 14, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Contractor, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Contractor under such subcontracts or purchase orders.

§ 14.4 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201–2007; in such case, the Guaranteed Maximum Price and Contract Time shall be increased as provided in Section 14.3.2 of AIA Document A201–2007, except that the term "profit" shall be understood to mean the Contractor's Fee as described in Sections 5.1.1 and Section 6.4 of this Agreement.

## ARTICLE 15   MISCELLANEOUS PROVISIONS

§ 15.1 Where reference is made in this Agreement to a provision of AIA Document A201–2007 or another Contract Document, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 15.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon, if any.)*

0.00 % N/A

§ 15.3 The Owner's representative:
*(Name, address and other information)*

Trac Bledsoe
515 Congress
Suite 1515
Austin, Texas 78701

Telephone Number: 512-669-5005

Mobile Number: 512-914-1615
Email Address: trac@b3cre.com

§ 15.4 The Contractor's representative:
*(Name, address and other information)*

Steven Pierce

**AIA Document A102™ – 2007 (formerly A111™ – 1997).** Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                (944663383)

Init. / 

**11**

Western Oaks 000011

2001 Chicon Street
Austin, Texas 78722
Telephone Number: 512-767-7404

Mobile Number: 512-809-4413
Email Address: spierce@sabrecommercial.com

§ 15.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days' written notice to the other party.

§ 15.6 Other provisions:

Rates for Project Manager, Superintendent, and Project Engineer attached as Exhibit C. Superintendent will be onsite 100%, project engineer is dedicated 100% to project, but may spend time at Sabre office for work as necessary. Project manager will be onsite as needed, but is dedicated only 50% to project.

## ARTICLE 16   ENUMERATION OF CONTRACT DOCUMENTS
§ 16.1 The Contract Documents, except for Modifications issued after execution of this Agreement, are enumerated in the sections below.

§ 16.1.1 The Agreement is this executed AIA Document A102–2007, Standard Form of Agreement Between Owner and Contractor.

§ 16.1.2 The General Conditions are AIA Document A201–2007, General Conditions of the Contract for Construction.

§ 16.1.3 The Supplementary and other Conditions of the Contract:

| Document | Title | Date | Pages |
|---|---|---|---|
| Raba Kistner Geo-Technical Report | GEOTECHNICAL ENGINEERING STUDY FOR WATERLEAF MEDICAL OFFICE BUILDING 5200 DAVIS LANE AUSTIN, TEXAS | 8/3/2015 | 35 |

§ 16.1.4 The Specifications:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*
Title of Specifications exhibit: Referenced in contract documents, but not attached.

| Section | Title | Date | Pages |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

§ 16.1.5 The Drawings:
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Drawing No. | Title | Issued | Revised |
|---|---|---|---|
| 01 | Cover Sheet | 9/2/2015 | |
| 02 | Final Plat | 9/2/2015 | |
| 03 | General Notes | 9/2/2015 | |
| 04 | Erosion Control & Tree Protection Plan | 9/2/2015 | |

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                (944663383)

Init. /

12

Western Oaks 000012

| 05 | Erosion Control Notes & Details | 9/2/2015 |
| 06 | Existing Conditions Drainage Area Map | 9/2/2015 |
| 07 | Developed Conditions Drainage Area Map | 9/2/2015 |
| 08 | Storm Sewer Drainage Map | 9/2/2015 |
| 09 | Offsite Drainage Area Map | 9/2/2015 |
| 10 | Site Plan | 9/2/2015 |
| 11 | Davis Lane Median Improvements | 9/2/2015 |
| 12 | Site Plan Notes & Details | 9/2/2015 |
| 13 | Onsite Grading & Drainage Plan | 9/2/2015 |
| 14 | Detention and Water Quality Ponds Plan | 9/2/2015 |
| 15 | Detention and Water Quality Ponds Details | 9/2/2015 |
| 16 | Water Quality Pond TCEQ Calculations | 9/2/2015 |
| 17 | Water Line Plan | 9/2/2015 |
| 18 | Waste Water Plan & Profile | 9/2/2015 |
| 19 | Waste Water Plan & Profile | 9/2/2015 |
| 20 | Storm Water Plan and Profile | 9/2/2015 |
| 21 | Storm Water Plan and Profile | 9/2/2015 |
| 22 | Storm Water Plan and Profile | 9/2/2015 |
| 23 | General Details | 9/2/2015 |
| 24 | General Details | 9/2/2015 |
| 25 | General Details | 9/2/2015 |
| 26 | Landscape Plan | 9/2/2015 |
| 27 | Landscape Ordinance Notes | 9/2/2015 |
| 28 | Building Elevations | 9/2/2015 |
| 29 | Building Elevations | 9/2/2015 |
| 30 | Building Elevations | 9/2/2015 |

§ **16.1.6** The Addenda, if any:

| Number | Date | Pages |
| --- | --- | --- |
| None | N/A | N/A |

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 16.

§ **16.1.7** Additional documents, if any, forming part of the Contract Documents:

   **.1**  AIA Document E201™–2007, Digital Data Protocol Exhibit, if completed by the parties, or the following:

      None

   **.2**  Other documents, if any, listed below:
      *(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that bidding requirements such as advertisement or invitation to bid, instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

      Exhibit A: Sabre Commercial Proposal Titled Horizontal Breakdown, Dated 9/30/15
      Exhibit B: Sabre Commercial Insurance Certificate
      Exhibit C: Sabre Commercial Labor Rates
      Exhibit D: Sabre Commercial Preliminary Project Schedule
      Exhibit E: Notice to Proceed to Sabre Commercial

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                                            (944663383)

**13**

Western Oaks 000013

Unofficial Copy by Travis Co. District Clerk – Ava L. Price

## ARTICLE 17   INSURANCE AND BONDS
The Contractor shall purchase and maintain insurance and provide bonds as set forth in Article 11 of AIA Document A201–2007.
*(State bonding requirements, if any, and limits of liability for insurance required in Article 11 of AIA Document A201–2007.)*

**Type of insurance or bond**
Reference Attached Exhibit B

**Limit of liability or bond amount ($0.00)**

This Agreement entered into as of the day and year first written above.

**OWNER** *(Signature)*

**CONTRACTOR** *(Signature)*

Lance Hughes, President
*(Printed name and title)*

Mark McDonald, Director of Healthcare Services
*(Printed name and title)*

**Init.**

**/**

AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                          (944663383)

**14**

Western Oaks 000014

## *Additions and Deletions Report for*

AIA® Document A102™ – 2007

This Additions and Deletions Report, as defined on page 1 of the associated document, reproduces below all text the author has added to the standard form AIA document in order to complete it, as well as any text the author may have added to or deleted from the original AIA text. Added text is shown underlined. Deleted text is indicated with a horizontal line through the original AIA text.

Note:  This Additions and Deletions Report is provided for information purposes only and is not incorporated into or constitute any part of the associated AIA document. This Additions and Deletions Report and its associated document were generated simultaneously by AIA software at 15:02:04 on 12/11/2015.

**PAGE 1**

**AGREEMENT** made as of the Twenty-second day of October in the year Two Thousand Fifteen

…

*(Name, legal status, address and other information)*

Western Oaks 19 Construction, Inc.
1301 Capital of Texas Highway
Suite A-300
Austin, TX 78746

…

Telephone Number: 512-615-9500

…

Sabre Commercial, Inc.
2001 Chicon Street
Austin, Texas 78722
Telephone Number: 512-767-7400

…

Waterleaf Medical at Davis Lane Shared Site
5200-B Davis Lane
Austin, Texas 78749
Shared scope of work benefiting Autumn Leaves and Waterleaf Medical Building, including shared drive, detention water quality pond, sitework, etc.

…

Euwer & Associates
205 Barracuda Street
Bayou Vista, Texas 77563
Telephone Number: 512-923-2975

**PAGE 3**

October 02, 2015

…

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                                    (944663383)

1

Western Oaks 000015

N/A

...

§ **4.3** The Contractor shall achieve Substantial Completion of the entire Work not later than <u>One hundred fifty ( 150 )</u> days from the date of commencement, or as follows:

...

        N/A                         N/A

...

None

...

Five percent (5%)

...

<u>Change Order with 5% fee. Additional general conditions will only apply in instances where contract duration is extended.</u>

...

10% Overhead, 5% Fee

§ **5.1.4** Rental rates for Contractor-owned equipment shall not exceed <u>0</u> percent ( <u>0</u> %) of the standard rate paid at the place of the Project.

**PAGE 4**

        N/A                         N/A                         N/A

...

§ **5.2.1** The Contract Sum is guaranteed by the Contractor not to exceed <u>Five Hundred Twelve Thousand Five Hundred Dollars and Zero Cents (\$ 512,500.00 )</u>, subject to additions and deductions by Change Order as provided in the Contract Documents. Such maximum sum is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Contractor without reimbursement by the Owner.

...

<u>Shared savings will be split 50/50 between owner and contractor at completion of project.</u>

...

None

...

        Pond Structures                         \$196,700

...

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                       (944663383)

Western Oaks 000016

None

**PAGE 8**

N/A

§ **12.1.3** Provided that an Application for Payment is received by the Architect not later than the 1st day of a month, the Owner shall make payment of the certified amount to the Contractor not later than the 1st day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Twenty-one ( 21 ) days after the Architect receives the Application for Payment.

**PAGE 9**

    .3    Add the Contractor's Fee, less retainage of Ten percent ( 10.00 %).The Contractor's Fee shall be computed upon the Cost of the Work at the rate stated in Section 5. ... er, if the Contractor's Fee is stated as a fixed sum in that Section, shall be an amount that bears the same ratio to that fixed-sum fee as the Cost of the Work bears to a reasonable estimate of the probable Cost of the Work upon its completion;

    .4    Subtract retainage of Ten percent ( 10.00 %) from that portion of the Work that the Contractor self-performs;

**PAGE 10**

N/A

...

Trac Bledsoe
B3 Commercial Investments
515 Congress, Suite 1515
Austin, Texas 78701
Telephone Number: 512-450-4230

...

    [ X ]    Litigation in a court of competent jurisdiction

**PAGE 11**

0.00 % N/A

...

Trac Bledsoe
515 Congress
Suite 1515
Austin, Texas 78701

...

Telephone Number: 512-669-5005

Mobile Number: 512-914-1615
Email Address: trac@b3cre.com

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:    (944663383)

**3**

Western Oaks 000017

...

Steven Pierce
2001 Chicon Street
Austin, Texas 78722
Telephone Number: 512-767-7404

PAGE 12

Mobile Number: 512-809-4413
Email Address: spierce@sabrecommercial.com

...

Rates for Project Manager, Superintendent, and Project Engineer attached as Exhibit C.
Superintendent will be onsite 100%, project engineer is dedicated 100% to project, but may spend time at Sabre
office for work as necessary. Project manager will be onsite as needed, but is dedicated only 50% to project.

...

| Raba Kistner<br>Geo-Technical Report | GEOTECHNICAL<br>ENGINEERING<br>STUDY<br>FOR<br>WATERLEAF<br>MEDICAL OFFICE<br>BUILDING<br>5200 DAVIS LANE<br>AUSTIN, TEXAS | 8/3/2015 | 35 |

...

Title of Specifications exhibit: Referenced in contract documents, but not attached.

...

| N/A | N/A | N/A | N/A |

...

| Number | | Title | | Date |

| Drawing No. | Title | Issued | Revised |
| --- | --- | --- | --- |
| 01 | Cover Sheet | 9/2/2015 | |
| 02 | Final Plat | 9/2/2015 | |
| 03 | General Notes | 9/2/2015 | |
| 04 | Erosion Control & Tree Protection Plan | 9/2/2015 | |
| 05 | Erosion Control Notes & Details | 9/2/2015 | |
| 06 | Existing Conditions Drainage Area Map | 9/2/2015 | |
| 07 | Developed Conditions Drainage Area Map | 9/2/2015 | |
| 08 | Storm Sewer Drainage Map | 9/2/2015 | |
| 09 | Offsite Drainage Area Map | 9/2/2015 | |
| 10 | Site Plan | 9/2/2015 | |
| 11 | Davis Lane Median Improvements | 9/2/2015 | |
| 12 | Site Plan Notes & Details | 9/2/2015 | |
| 13 | Onsite Grading & Drainage Plan | 9/2/2015 | |

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974,
1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright
Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and
criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on
12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes:                                                                                           (944663383)

**4**

Western Oaks 000018

| | | |
|---|---|---|
| 14 | Detention and Water Quality Ponds Plan | 9/2/2015 |
| 15 | Detention and Water Quality Ponds Details | 9/2/2015 |
| 16 | Water Quality Pond TCEQ Calculations | 9/2/2015 |
| 17 | Water Line Plan | 9/2/2015 |
| 18 | Waste Water Plan & Profile | 9/2/2015 |
| 19 | Waste Water Plan & Profile | 9/2/2015 |
| 20 | Storm Water Plan and Profile | 9/2/2015 |
| 21 | Storm Water Plan and Profile | 9/2/2015 |
| 22 | Storm Water Plan and Profile | 9/2/2015 |
| 23 | General Details | 9/2/2015 |
| 24 | General Details | 9/2/2015 |
| 25 | General Details | 9/2/2015 |
| 26 | Landscape Plan | 9/2/2015 |
| 27 | Landscape Ordinance Notes | 9/2/2015 |
| 28 | Building Elevations | 9/2/2015 |
| 29 | Building Elevations | 9/2/2015 |
| 30 | Building Elevations | 9/2/2015 |

PAGE 13

None                          N/A                          N/A

...

None

...

*(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201–2007 provides that building requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

Exhibit A: Sabre Commercial Proposal Titled Horizontal Breakdown, Dated 9/30/15
Exhibit B: Sabre Commercial Insurance Certificate
Exhibit C: Sabre Commercial Labor Rates
Exhibit D: Sabre Commercial Preliminary Project Schedule
Exhibit E: Notice to Proceed to Sabre Commercial

PAGE 14

Reference Attached Exhibit B

...

Lance Hughes, President                    Mark McDonald, Director of Healthcare Services

Additions and Deletions Report for AIA Document A102™ – 2007 (formerly A111™ – 1997). Copyright © 1920, 1925, 1951, 1958, 1961, 1963, 1967, 1974, 1978, 1987, 1997 and 2007 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
User Notes: (944663383)

5

Western Oaks 000019

## Certification of Document's Authenticity
*AIA® Document D401™ – 2003*

I, Mark McDonald, hereby certify, to the best of my knowledge, information and belief, that I created the attached final document simultaneously with its associated Additions and Deletions Report and this certification at 15:02:04 on 12/11/2015 under Order No. 7316198036_1 from AIA Contract Documents software and that in preparing the attached final document I made no changes to the original text of AIA® Document A102™ – 2007, Standard Form of Agreement Between Owner and Contractor   where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price, as published by the AIA in its software, other than those additions and deletions shown in the associated Additions and Deletions Report.

_____
*(Signed)*

_____
*(Title)*

_____
*(Dated)*

Unofficial copy Travis Co. District Clerk Velva L. Price

**AIA Document D401™ – 2003.** Copyright © 1992 and 2003 by The American Institute of Architects. **All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 15:02:04 on 12/11/2015 under Order No.7316198036_1 which expires on 12/27/2015, and is not for resale.
**User Notes:** (944663383)

**1**

Western Oaks 000020

**Sabre Commercial, Inc.**
2001 Chicon Street
Austin, Tx 78722

Revised  11/30/2015

| PROJECT: | Surgery Center Shell Building | | | | $ | 2,023,307 | BLDG AREA |
|---|---|---|---|---|---|---|---|
| LOCATION: | 5200 Davis Lane, Austin, Tx | | | | $ | | 77.82 |

| | Bid Package | Description | * | Sub Amount | Sub Name | | $ PER SF |
|---|---|---|---|---|---|---|---|
| 7 | 01-00-00 | Division 1 - General Requirements | | | | $ | - |
| 8 | 01 10 00 | Summary | * | - | | $ | - |
| 9 | 01 25 00 | Substituion Procedures | * | - | | $ | - |
| 10 | 01 26 00 | Conctract Modification Prodcedures | * | - | | $ | - |
| 11 | 01 29 00 | Payment Procedures | * | - | | $ | - |
| 12 | 01 31 00 | Project Management | * | - | | $ | - |
| 13 | 01 32 33 | Progress Documentation | * | - | | $ | - |
| 14 | 10 32 33 | Photographic Documentation | * | - | | $ | - |
| 15 | 01 33 00 | Submittal Procedures | * | - | | $ | - |
| 16 | 01 40 00 | Quality Requirements (Testing Lab) | * | By Owner | | $ | - |
| 17 | 01 42 00 | References | * | - | | $ | - |
| 18 | 01 60 00 | Product Requirements | * | - | | $ | - |
| 19 | 01 73 00 | Execution | * | - | | $ | - |
| 20 | 01 77 00 | Closeout Procedures | * | - | | $ | - |
| 21 | 01 78 39 | Project Record Documents | * | - | | $ | - |
| 22 | | | * | - | | $ | - |
| 23 | 02-00-00 | Division 2 - Exising Conditions | | | | $ | - |
| 24 | | Demotion | * | - | | $ | - |
| 25 | | | * | - | | $ | - |
| 26 | 03-00-00 | Division 3 - Concrete | | | | $ | - |
| 27 | 03 33 00 | Cast In Place Concrete | * | 274,602 | CX2 | $ | 10.56 |
| 28 | | Concrete MEP Pads | * | - | | $ | - |
| 29 | | Rock Excavation for foundation | * | 30,000 | | $ | 1.15 |
| 30 | | Rock Salt/Stain FinishAllowance (2,800 SF) | P | 8,400 | | $ | 0.32 |
| 31 | | | | - | | $ | - |
| 32 | 04-00-00 | Division 4 - Masonry | | | | $ | - |
| 33 | | CMU Walls | * | 182,020 | CD Lone Star | $ | 7.00 |
| 34 | | Brick Veneer | * | w/above | OR Double T | $ | - |
| 35 | | Stone Veneer | * | w/above | | $ | - |
| 36 | | | * | - | | $ | - |
| 37 | 05-00-00 | Division 5 - Metals | | | | $ | - |
| 38 | 05 50 00 | Structural Steel Fabrication | * | 268,955 | CMC | $ | 10.34 |
| 39 | | Structural Steel Erection | * | 87,285 | CMC | $ | 3.36 |
| 40 | | Ornamental Handrails | * | 48,000 | | $ | 1.85 |
| 41 | | Lobby Stair Framing Allowance | P | 6,000 | | $ | 0.23 |
| 42 | | | * | - | | $ | - |
| 43 | 06-00-00 | Division 6 - Woods, Plastics, Composites | | | | $ | - |
| 44 | 06 10 53 | Misc Rough Carpentry | * | 8,384 | w/drywall | $ | 0.32 |
| 45 | 06 20 23 | Interior Finish Carpentry | * | - | | $ | - |
| 46 | | | * | - | | $ | - |
| 47 | 07-00-00 | Division 7 - Thermal and Moisture Protection | | | | $ | - |
| 48 | | Dampproofing / Waterproofing | * | 23,795 | Restoration Systems | $ | 0.92 |
| 49 | 07 50 00 | TPO Roofing | * | 95,650 | Petersen Dean | $ | 3.68 |
| 50 | | Roof Hatch | * | w/roofing | | | |
| 51 | | Standing Seam at Conopies | * | w/roofing | | | |
| 52 | | Metal Soffit at Canopies | * | w/roofing | | $ | - |
| 53 | | Standing Seam at Awnings | * | w/roofing | | $ | - |
| 54 | 07 99 00 | Joint Sealants | * | 13,710 | WeatherTex | | |
| 55 | | | * | - | | $ | - |
| 56 | 08-00-00 | Division 8 - Openings | | | | $ | - |
| 57 | 08 12 13 | Hollow Metal Frames | * | 23,634 | La Force | $ | 0.91 |
| 58 | 08 41 26 | All-Glass Entrance and Storefront | * | 122,600 | Floyds | $ | 4.72 |
| 59 | | Upgrade to SolarBan 60 Low-E per code | * | 28,400 | Floyds | $ | 1.09 |
| 60 | | Move Single Leaf Doors to TI Contract | * | (8,400) | Floyds | $ | (0.32) |
| 61 | 08 71 00 | Finish Hardware | * | w/doors | | $ | - |
| 62 | 08 80 00 | Glazing | * | w/storefront | | $ | - |
| 63 | 08 83 00 | Mirrors | * | n/a | | $ | - |
| 64 | | Intall Doors/Frames/Hardware | * | 800 | | $ | 0.03 |

Western Oaks 000021



**Sabre Commercial, Inc.**
2001 Chicon Street
Austin, Tx 78722

Revised   11/30/2015

| | PROJECT: | **Surgery Center Shell Building** | | | | $ | **2,023,307** | BLDG AREA |
|---|---|---|---|---|---|---|---|---|
| | LOCATION: | **5200 Davis Lane, Austin, Tx** | | | | $ | | 77.82 |

| | Bid Package | Description | * | Sub Amount | Sub Name | | | $ PER SF |
|---|---|---|---|---|---|---|---|---|
| 65 | | | * | - | | | $ | - |
| 66 | 09-00-00 | Division 9 - Finishes | | | | | $ | - |
| 67 | 09 22 16 | Non Structural Metal Framing | * | w/drywall | | | $ | - |
| 68 | | Light Guage Trusses | * | 34,431 | w/drywall | | $ | 1.32 |
| 69 | 09 29 00 | Gypsum Board | * | 94,915 | Live Oak | | $ | 3.65 |
| 70 | | Stucco | * | 24,300 | Diaz | | $ | 0.93 |
| 71 | 09 30 13 | Ceramic Tile (1,000 sf allowance @ $12) | * | 12,000 | | | $ | 0.46 |
| 72 | 09 51 13 | Acoustical Panel Ceilings | * | w/drywall | | | $ | - |
| 73 | 09 68 13 | Tile Carpeting / Resilient / Base | * | 4,000 | | | $ | 0.15 |
| 74 | 09 91 23 | Interior Painting | * | 30,605 | Alpha Painting | | $ | 1.18 |
| 75 | | | * | - | | | $ | - |
| 76 | | | | - | | | $ | - |
| 77 | 10-00-00 | Division 10 - Specialties | | | | | $ | - |
| 78 | 10 44 13 | Fire Protection Cabinets | * | 500 | | | $ | 0.02 |
| 79 | | | * | - | | | $ | - |
| 80 | | | * | - | | | $ | - |
| 81 | | | * | - | | | $ | - |
| 82 | 11-00-00 | Division 11 - Equipment | | | | | $ | - |
| 83 | | | * | - | | | $ | - |
| 84 | | | * | - | | | $ | - |
| 85 | 12-00-00 | Division 12 - Furnishings | | | | | $ | - |
| 86 | 12 24 13 | Window Blinds | * | NIC | | | $ | - |
| 87 | | | * | - | | | $ | - |
| 88 | 13-00-00 | Division 13 - Special Construction | | | | | $ | - |
| 89 | | | | - | | | $ | - |
| 90 | | | * | - | | | $ | - |
| 91 | 14-00-00 | Division 14 - Conveying Equipment | | | | | $ | - |
| 92 | | Elevator | * | 72,870 | Thysen Krupp | | $ | 2.80 |
| 93 | | | * | - | | | $ | - |
| 94 | 21-00-00 | Division 21 - Fire Suppression | | | | | $ | - |
| 95 | | Fire Sprinkler System | * | 23,970 | Central Texas | | $ | 0.92 |
| 96 | | | * | - | | | $ | - |
| 97 | 22-00-00 | Division 22 - Plumbing | | | | | $ | - |
| 98 | | Plumbing | * | 33,900 | Texas Quality | | $ | 1.30 |
| 99 | | | * | - | | | $ | - |
| 100 | 23-00-00 | Division 23 - HVAC | | | | | $ | - |
| 101 | | HVAC | * | 22,710 | Air Craft | | $ | 0.87 |
| 102 | | | * | - | | | $ | - |
| 103 | 25-00-00 | Division 25 - Integrated Automation | | | | | $ | - |
| 104 | | HVAC Controls | * | - | | | $ | - |
| 105 | | | * | - | | | $ | - |
| 106 | 26-00-00 | Division 26 - Electrical | | | | | $ | - |
| 107 | | Electrical | * | 124,800 | Allied | | $ | 4.80 |
| 108 | | | * | - | | | $ | - |
| 109 | 27-00-00 | Division 27 - Communications | | | | | $ | - |
| 110 | | | * | - | | | $ | - |
| 111 | | | * | - | | | $ | - |
| 112 | 28-00-00 | Division 28 - Electronic Safety and Security | | | | | $ | - |
| 113 | | Fire Alarm | * | 6,710 | Taylor Security | | $ | 0.26 |
| 114 | | | * | - | | | $ | - |
| 115 | 31-00-00 | Division 31 - Earthwork | | | | | $ | - |
| 116 | | Excavation | * | - | | | $ | - |
| 117 | | SWPPP | * | - | | | $ | - |
| 118 | | Building Pad - Phase 1 | * | w/excavation | | | $ | - |
| 119 | | Building Pad - Phase 2 | * | w/excavation | | | $ | - |
| 120 | | Termite Treatment | * | 1,100 | | | $ | 0.04 |
| 121 | | Tree Protection | * | w/horizontal | | | $ | - |
| 122 | | | * | - | | | $ | - |

Unofficial copy Travis Co. District Clerk Velva L. Price

**SABRE**

**Sabre Commercial, Inc.**
2001 Chicon Street
Austin, Tx 78722

Revised 11/30/2015

| PROJECT: | Surgery Center Shell Building | | | | $ 2,023,307 | BLDG AREA |
|---|---|---|---|---|---|---|
| LOCATION: | 5200 Davis Lane, Austin, Tx | | | | | $ 77.82 |
| Bid Package | Description | * | Sub Amount | Sub Name | | $ PER SF |

| | Bid Package | Description | * | Sub Amount | Sub Name | | $ PER SF |
|---|---|---|---|---|---|---|---|
| 123 | | | * | - | | | $ - |
| 124 | 32-00-00 | Division 32 - Exterior Improvements | | | | | $ - |
| 125 | | Asphalt Paving - Phase 2 | * | w/horizontal | | | $ - |
| 126 | | Asphalt Paving - Shared Drive | * | w/horizontal | | | $ - |
| 127 | | Paving Striping & Signs | * | w/horizontal | | | $ - |
| 128 | | Fencing | * | w/horizontal | | | $ - |
| 129 | | Curb and Gutter | * | w/horizontal | | | $ - |
| 130 | | Sidewalks | * | w/horizontal | | | $ - |
| 131 | | Landscaping - Phase 1 | * | w/horizontal | | | $ - |
| 132 | | Landscaping - Phase 2 | * | 59,520 | | | $ 2.29 |
| 133 | | Irrigation | * | w/horizontal | | | $ - |
| 134 | | Bike Racks | P | 800 | | | $ 0.03 |
| 135 | | | * | - | | | $ - |
| 136 | 33-00-00 | Division 33 - Utilities | | | | | $ - |
| 137 | | Sanitary Sewer | * | w/horizontal | | | $ - |
| 138 | | Water Lines | * | w/horizontal | | | $ - |
| 139 | | Storm Drianage | * | w/horizontal | | | $ - |
| 140 | | Detention Pond Piping / filters / etc | * | w/horizontal | | | $ - |
| 141 | | Detention Pond Structures | * | w/horizontal | | | $ - |
| 142 | | | * | - | | | $ - |
| 143 | | Monument Sign Allowance | * | 8,000 | | | $ 0.31 |
| 144 | | Dumpster Enclosure | * | w/horizontal | | | $ - |
| 145 | | Stack Stone Tree Well (175 LF) | * | w/horizontal | | | $ - |
| 146 | | Sod in lieu of Hydromulch | * | with pond | | | $ - |
| 147 | | Generator Pad | * | with TI | | | $ - |
| 148 | | | | - | | | $ - |
| 149 | | Sub - Bonds | | - | | | $ - |
| 150 | | MBE/WBE/HUB Participation | | | | - | $ - |
| 151 | | SUBTOTAL | | 1,768,966 | | 0 | $68.04 |
| 152 | | GENERAL CONDITIONS | | 144,415 | | 0 | $5.55 |
| 153 | | TOTALS | | 1,913,381 | | 1,913,381 | $147.18 |
| 154 | 0.0825 | SALES TAX      Remodel Tax ?? | N | | | 0 | $0.00 |
| 155 | | PERMITS | | | | by Owner | $0.00 |
| 156 | | AGC FEES | | 100% | | 3,785 | $0.15 |
| 157 | | SUBTOTAL | | | | 1,917,166 | $73.74 |
| 158 | | BOND-INITIAL COST | n | | | 0 | $0.00 |
| 159 | Default Value | ONE % BOND PREM >12 MO; PROJ TIME: | | 7 | | 0 | $0.00 |
| 160 | 0.000940 | BUILDER'S RISK | | 0.000940 | | 1,902 | $0.07 |
| 161 | 0.003500 | GENERAL LIABILI | | 0.003900 | | 7,891 | $0.30 |
| 162 | | OWNERS CONTRACTORS PROTECTIVE | | - | | 0 | $0.00 |
| 163 | | SUBTOTAL | | | | 1,926,959 | $74.11 |
| 164 | | OVERHEAD & PROFIT | | 5.00% | | 96,348 | $3.71 |
| 165 | | | | | | 2,023,307 | $77.82 |
| 166 | | | | | | | |
| 167 | | GC Contingency | | - | | 0 | $0.00 |
| 168 | | | | | | | |
| 169 | | Total | | | | 2,023,307 | |
| 170 | | Submitted Amount | | | Shell Building | 2,023,300 | $ 77.82 |
| 171 | | | | | Phase 2 Site | 404,700 | |
| 172 | | | | | Sabre Discount | -80,000 | |
| 173 | | | | | Contract Total | 2,348,000 | |

Unofficial copy Travis Co. District Clerk Velva L. Price

## Waterleaf / Autumn Leaves Project
### Horizontal Cost Breakdown Revised 11/30/2015
(Based on LJA Engineering Civil Set - Sheet 1-30 with turn lane and utility changes)

| | HORIZONTAL COMPONENT | Phase 1 | Phase 2 | Shared |
|---|---|---|---|---|
| 31-00-00 | **Division 31 - Earthwork** | | | |
| | Clear, Grup Mass Excavation | 97,650 | 75,250 | 8,000 |
| | Pond Excavation | n/a | n/a | 12,000 |
| | Construction Entrance / SWPPP | n/a | n/a | 22,000 |
| | Turn Lane | n/a | n/a | 49,000 |
| | Additional Selectfill | 30,150 | included | n/a |
| | | | | |
| 32-00-00 | **Division 32 - Exterior Improvements** | | | |
| | Asphalt Paving | 104,300 | 130,800 | 36,500 |
| | Curb and Gutter | 25,250 | | 14,650 |
| | Sidewalks | 18,150 | | 8,800 |
| | Fencing | n/a | n/a | 11,000 |
| | Temporary Fencing | n/a | n/a | 5,250 |
| | MEP / Dumpster Pads | 4,500 | 4,500 | n/a |
| | Light Pole Bases | 0 | - | n/a |
| | Stack Stone Tree Well | 9,300 | 8,750 | n/a |
| | Mortared Rock Walls | 10,400 | 7,700 | n/a |
| | | | | |
| 33-00-00 | **Division 33 - Utilities** | | | |
| | Storm Drainage | 82,750 | 61,000 | 0 |
| | Sanitary | 56,300 | 22,100 | 0 |
| | Water | 60,150 | 40,600 | 0 |
| | Grease Trap (Allowance - not sized) | 11,500 | n/a | n/a |
| | Pond Structures | n/a | n/a | 196,700 |
| | Pond Piping / Filters / GeoMembrane/Sod | n/a | n/a | 84,850 |
| | Pond Structural Engineering / Design | n/a | n/a | 3,500 |
| | | | | |
| 01-00-00 | **General Requirements** | | | |
| | GC's / Insurance / Permits / Fees | 35,800 | 34,750 | 35,850 |
| | OH & Profit | 27,500 | 19,250 | 24,400 |
| | | | | |
| | **TOTALS** | **573,700** | **404,700** | **512,500** |
| | | **TOTAL HORIZONTAL** | | **$ 1,490,900.00** |

**Clarifications and Assumptions**

1 Heavy duty paving (drives) is 9 inches of base and 2 inches of asphalt
2 Light duty paving (parking) is 7 inches of base and 2 inches of asphalt
3 Waterleaf building pad is 24" minimum of select fill
4 Autumn leaves building pad is 28" minimum of select fill
5 Light pole bases are 24" diameter, 6 ft 6 inch penetration and 2 foot extension
6 Autumn Leaves Light Pole Bases are excluded.
7 Pond structure is an Allowance of 196,700 as no structural drawings are provided
8 Landscaping is NOT in site / horizontal package and is part of building costs
9 Sod in Detention Pond is included
10 Parking lot striping and signage is NOT included in this package
11 Autumn leaves exterior concrete is sidewalks,dumpster pad and curb and gutters only.
12 Sitework, excavation, fill and paving based on Raba Kistner geotech report of 8/3/2015
13 All Storm Water, Sanitar and Water utilities are allocated to Phase 1 and Phase 2 costs

SABRE

Unofficial copy Travis Co. District Clerk Velva L. Price

Western Oaks 000024



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 11/2/2015 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Carol Manhart | | |
|---|---|---|---|
| Stephens Insurance, LLC<br>100 Congress Ave<br>Suite 750<br>Austin            TX  78701 | PHONE (A/C, No, Ext): (512) 542-3207 | | FAX (A/C, No): (512) 542-3238 |
| | E-MAIL ADDRESS: carol.manhart@stephens.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Cincinnati Insurance Co | | 10677 |
| Sabre Commercial Inc.<br>2001 Chicon Street | INSURER B: Texas Mutual Insurance Company | | 22945 |
| | INSURER C: | | |
| | INSURER D: | | |
| Austin            TX  78722 | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES          CERTIFICATE NUMBER: CL159810697          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY<br>  CLAIMS-MADE  X OCCUR | X | | EPP0347431 | 9/8/2015 | 9/8/2018 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 15,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY  PRO-JECT  LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY<br>  ANY AUTO<br>  ALL OWNED AUTOS    SCHEDULED AUTOS<br>  X HIRED AUTOS    NON-OWNED AUTOS | | | EPP0347431 | 9/8/2015 | 9/8/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  X OCCUR<br>  EXCESS LIAB    CLAIMS-MADE | | | EPP0347431 | 9/8/2015 | 9/8/2018 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | DED  X RETENTION $ 10,000 | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY        Y/N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | | TSF0001293660 | 9/8/2015 | 9/8/2016 | X PER STATUTE    OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| trac@b3cre.com<br><br>Western Oaks 19 Construction, Inc.<br>Attn: Trac Bledsoe<br>1301 Capital of Texas Highway<br>Suite A-300<br>Austin, TX  78746 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>Greg Meserole/WOAL |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          The ACORD name and logo are registered marks of ACORD
INS025 (201401)

Western Oaks 000025



# Sabre Commercial

## 2016 Labor Rate Schedule

| Class | Bare | | | | Burdened (53.2% avg) | | | |
|---|---|---|---|---|---|---|---|---|
| | Hour | Daily | Weekly | Monthly | Hour | Daily | Weekly | Monthly |
| PM3 | $ 51.45 | $ 411.61 | $ 2,058.05 | $ 8,918.21 | $ 78.00 | $ 624.00 | $ 3,120.00 | $ 13,520.00 |
| PM2 | $ 45.28 | $ 362.20 | $ 1,811.02 | $ 7,847.77 | $ 69.00 | $ 552.00 | $ 2,760.00 | $ 11,960.00 |
| PM1 | $ 39.79 | $ 318.33 | $ 1,591.65 | $ 6,897.15 | $ 61.00 | $ 488.00 | $ 2,440.00 | $ 10,573.33 |
| Super 3 | $ 49.84 | $ 398.69 | $ 1,993.44 | $ 8,638.25 | $ 76.00 | $ 608.00 | $ 3,040.00 | $ 13,173.33 |
| Super 2 | $ 41.94 | $ 335.50 | $ 1,677.50 | $ 7,269.18 | $ 64.50 | $ 516.00 | $ 2,580.00 | $ 11,180.00 |
| Super 1 | $ 25.82 | $ 206.55 | $ 1,032.75 | $ 4,475.23 | $ 41.00 | $ 328.00 | $ 1,640.00 | $ 7,106.67 |
| PE3 | $ 33.93 | $ 271.41 | $ 1,357.05 | $ 5,880.54 | $ 51.50 | $ 412.00 | $ 2,060.00 | $ 8,926.67 |
| PE2 | $ 33.33 | $ 266.67 | $ 1,333.33 | $ 5,777.78 | $ 50.50 | $ 404.00 | $ 2,020.00 | $ 8,753.33 |
| PE1 | $ 25.73 | $ 205.86 | $ 1,029.32 | $ 4,460.37 | $ 39.50 | $ 316.00 | $ 1,580.00 | $ 6,846.67 |

Unofficial copy Travis Co. District Clerk Velva L. Price



Waterleaf Medical at Davis Lane
Overall Site, Shell, Interior Schedule

| ID | Task Name | Duration | Start | Finish | Predecessors |
|---|---|---|---|---|---|
| 1 | Waterleaf Medical at Davis Lane | 228 days | Mon 10/5/15 | Wed 8/17/16 | |
| 2 | Site and Shell Package | 161 days | Mon 10/5/15 | Fri 5/13/16 | |
| 3 | Sitework | 150 days | Mon 10/5/15 | Fri 4/29/16 | |
| 4 | Building Slab and Structure | 60 days | Mon 11/2/15 | Fri 1/22/16 3SS+20 days | |
| 5 | Exterior Dried In | 30 days | Mon 1/25/16 | Fri 3/4/16 4 | |
| 6 | Interior Build-Out Start | 0 days | Fri 3/4/16 | Fri 3/4/16 5 | |
| 7 | Exterior Completion | 50 days | Mon 3/7/16 | Fri 5/13/16 6 | |
| 8 | Interior Build-Out | 118 days | Mon 3/7/16 | Wed 8/17/16 | |
| 9 | Clinic Finish-Out | 118 days | Mon 3/7/16 | Wed 8/17/16 5 | |
| 10 | Surgery Finish-Out | 118 days | Mon 3/7/16 | Wed 8/17/16 5 | |

Project: Davis Lane Medical Site S
Date: Mon 12/7/15

Task          Split          Milestone ◆          Summary          Project Summary

Page 1

Unofficial copy Travis Co. District Clerk Velva L. Price

Western Oaks 000027

# WESTERN OAKS 19 CONSTRUCTION, Inc.

October 2, 2015

Mark McDonald
Sabre Commercial, Inc.
2001 Chicon Street
Austin, Texas 787222
Email: mmcdonald@sabrecommercial.com

RE:    5200 Davis Lane – Site Construction
       Notice to Proceed

Dear John,

This letter is to confirm that you are released to commence construction per your revised pricing breakdown dated 9/30/15, totaling $512,500.

Please draft an AIA GMAX contract for review at soonest opportunity, and send over your detailed project schedule on the site work, for review.

Please call with any questions you may have regarding this Notice to Proceed. We are looking forward to having the project underway.

Best Regards,

Trac Bledsoe

cc:    Lance R. Hughes – Western Oaks 19 Construction, Inc
       Josh Barbee – Lake Superior Contracting, LP
       Jason Glover – The LaSalle Group

Unofficial copy Travis Co. District Clerk Velva L. Price